United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE SHEET METAL WORKERS HEALTH CARE PLAN OF NORTHERN CALIFORNIA, *et al.*,

    Plaintiffs,

    v.

SUPERHALL MECHANICAL, INC.,

    Defendant.
_____/

No. C-10-2212 EMC

**ORDER RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 25)**

    Plaintiffs are the Board of Trustees for three Trust Funds[1] and Bruce Word, Trustee. The Trust Funds are employee benefit plans. Plaintiffs filed suit against Defendant Superhall Mechanical, Inc. ("Superhall") pursuant to the National Labor Relations Act, *see* 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1132. After Superhall failed to respond to Plaintiffs' complaint, default was entered on January 28, 2011. *See* Docket No. 24 (notice). Plaintiffs thereafter moved for default judgment. Having considered Plaintiffs' brief and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** the motion for default judgment.

---

[1] The Trust Funds are the Sheet Metal Workers Local 104 Health Care Plan (the "Health Trust Fund"), Sheet Metal Workers Pension Trust of Northern California (the "Pension Trust Fund"), and Sheet Metal Workers Local 104 Vacation, Holiday Savings Plan (the "Vacation Trust Fund"). As discussed below, the Health Trust Fund was incorrectly named in the complaint.]

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit on May 21, 2010. *See* Docket No. 1 (complaint). According to the complaint, Superhall failed to make contributions to the Trust Funds at issue as required by a collective bargaining agreement ("CBA") entered into between Sheet Metal Workers' International Association Local Union No. 104 and Superhall. *See* Compl. ¶¶ 5-7; *see also* Van Buskirk Decl., Ex. 1 (CBA, Add. No. 1, Item 4, § B) (providing that "[e]ach Employer shall contribute to the Administrator/Trustees the sums designated for each hour worked by each employee covered in this Agreement, including overtime, to the following Funds, per the Wage and Fringe Schedules, Summary Plan Descriptions, and Plan documents").

After Superhall did not respond to the complaint, Plaintiffs requested entry of default, and default was entered on January 28, 2011. *See* Docket No. 24 (notice of default). Plaintiffs thereafter filed the pending motion for default judgment on April 27, 2011. In the motion, Plaintiffs ask to be awarded (1) the unpaid contributions in the amount of $118,079.28 (for the period May 1, 2010, through January 31, 2011); (2) liquidated damages in the amount of $23,615.86; (3) interest in the amount of $3,149.23; *see* Hallenbeck Decl. ¶ 4, and (4) attorney's fees and costs in the amount of $2,905. *See* Carroll Decl. ¶¶ 2, 5.

## II. DISCUSSION

A.  Adequacy of Service of Process

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation "in a manner prescribed for individuals by subdivision (e)(1)," and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4. Under California law, substituted service is permissible under California Code of Civil Procedure § 415.20(a). The declaration of the process server indicates that there was compliance with § 415.20(a). *See* Docket No. 16 (proof of service/declaration). Accordingly, the Court concludes that service of process was properly effectuated.

B. <u>Amendment of Party</u>

In supplemental briefing (filed in response to this Court's order of May 25, 2011, see Docket No. 33 (order)), Plaintiffs admitted that they had made a mistake in naming one of the plaintiffs. More specifically, in the complaint they identified as one of the plaintiffs the Sheet Metal Workers Health Care Plan of Northern California. According to Plaintiffs, they should have named instead the Sheet Metal Workers Local 104 Health Plan. Plaintiffs now ask for leave to amend the complaint to correct their error.

Federal Rule of Civil Procedure 15(a) provides that a "court should freely given leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In general, "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). In the instant case, the main question is whether the amendment would prejudice Superhall. The Court concludes that it would not. Although it could be argued that Superhall would have responded to the complaint (and not defaulted) had the proper plaintiff been identified in the first instance, the Court finds that scenario unlikely. Two of the three plaintiffs were correctly identified. Superhall never appeared notwithstanding the legal claim imposing substantial liability. That being the case, it is unlikely that the inclusion of one incorrect plaintiff dictated Superhall's decision not to defend.

Accordingly, the Court grants the request for leave to amend and orders Plaintiff to serve the amended complaint on Superhall along with this Order forthwith.

C. *Eitel* Analysis

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

3

> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Taking into account the above factors, the Court finds that a default judgment is appropriate under the circumstances. First, Plaintiffs have adequately stated a claim for relief under ERISA. More specifically, they have alleged that contributions were owed pursuant to the CBA and that Superhall failed to make all contributions owed. *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement"); *id.* § 1132(a)(3) (authorizing, inter alia, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation). Second, if the motion for default judgment were to be denied, then Plaintiffs would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) (stating that "[t]o deny plaintiffs' motion [for default judgment] would leave them without a remedy" and that "[p]rejudice is also likely in light of the merits of their claim"); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (stating that, "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery"). Third, the sum of money at stake in the action is appropriate as it is tailored to the specific misconduct of Superhall. *Id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, because Superhall has not filed an answer to the complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that the default was due to excusable neglect, especially when Plaintiffs served not only the summons and complaint but also the request for entry of default and motion for default judgment, *see* Docket Nos. 18, 25 (proofs of service), but still received no response.

Accordingly, Plaintiffs' motion for default judgment is granted, and the Court now turns to the issue of damages.

C.     Damages

As noted above, Plaintiffs ask to be awarded unpaid contributions, liquidated damages, interest, and attorney's fees. Having reviewed the evidence submitted in conjunction with the motion for default judgment, the Court concludes that the sums sought by Plaintiff are appropriate.

First, Plaintiffs have provided adequate evidence supporting the amount of unpaid contributions requested. *See* Hallenbeck Decl. ¶¶ 3-4.

Second, Plaintiffs have provided adequate evidence showing that each of the Trust Funds is entitled to liquidated damages at a rate of 20% of the amount that is delinquent (*i.e.*, $118,079.28 x 20% = $23,615.86). *See id.* ¶ 4. More specifically:

• The CBA provides that liquidated damages shall be assessed for a failure to make contributions, as provided for in the Trust Agreements. *See* Van Buskirk Decl., Ex. 1 (CBA, Add. No. 1, Item 5, § C). The Pension Trust Agreement provides that liquidated damages shall be presumed to be $20 per delinquency or 10 percent of the amount which is delinquent, whichever is greater; however, it also provides that the Joint Board may adopt special rules applicable in cases of multiple delinquencies by an employer, including providing for liquidated damages up to the highest rate permitted by ERISA. *See* Maraia Decl., Ex. 4 (Pension Trust Agreement, art. III, § C). A rate of 20% was subsequently adopted by the Board. *See id.*, Ex. 5 (minutes of Pension Board Meeting, dated 9/22/1989) (stating that "liquidated damages shall increase from 10% to 20% as of the date of referral [to collection counsel]"); *see also* Carroll Decl. ¶ 8 (stating that he was present at the Board's meeting of 9/22/1989 when the decision to increase to 20% was made).

• Like the Pension Trust Agreement, the Health Trust Agreement provides that liquidated damages "shall be presumed to be the sum of ten percent (10%) of the amount due the Trust Fund for the delinquent period or $20.000, whichever is greater." Supp. Maraia Decl., Ex. 11 (Health Trust Agreement, art. IV, § 4.4). The Health Trust Agreement further provides: "In the event the delinquency is referred to an attorney for collection, the liquidated damages will increase to twenty (20%) of the unpaid contribution." *Id.*

• There is no Trust Agreement for the Vacation Trust Fund. However, as Plaintiffs explained at the hearing on the motion for default judgment, ERISA provides that an employer is required to

make contributions to a plan under either a CBA *or* under the terms of the plan itself. *See* 29 U.S.C. § 1145 (stating that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement"). *See also* Van Buskirk Decl., Ex. 1 (CBA requiring contribution per Plan documents). Plaintiffs have provided adequate evidence that the Vacation Trust Fund adopted the 20% liquidated damages rate as part of the terms of the plan when it signed on to the Joint Billing and Collection Services Agreement.[2] *See* Maraia Decl. ¶ 9 & Ex. 6 (Joint Billing and Collection Services Agreement, App. D) (providing that, when a matter is referred to collection counsel, the liquidated damages rate is doubled, either from 10% to 20% or from $100.00 to $200.00); Supp. Carroll Decl. ¶ 4.

Third, Plaintiffs have provided sufficient evidence that the Trust Funds adopted an interest rate of 10% on unpaid. *See* 29 U.S.C. § 1132(g) (providing that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986"); Carroll Decl. ¶¶ 7-8 (stating that he was present at the Board meeting when the 10% interest rate was adopted); Maraia Decl., Ex. 7 (memo to contributing employers) (notifying employers of the 10% interest rate); *see also* Hallenbeck Decl. ¶ 4 (explaining that "[i]nterest is computed at 10% simple interest after allocating all payments made to the oldest months of contribution liability").

Finally, the fees and costs requested by Plaintiffs, which are provided for both by the CBA and ERISA, *see* Van Buskirk Decl., Ex. 1 (CBA, Add. No. 1, Item 5, §(C); 29 U.S.C. § 1132(g)(2)(D), are reasonable. The only costs requested by Plaintiffs are the filing fee and the cost of service of process. *See* Carroll Decl. ¶ 2 (stating that $350 in costs were incurred for the filing fee and $150 for service of process). As for attorney's fees, Plaintiffs ask to be compensated for 13 hours of work at an hourly rate of $185.00. *See id.* ¶ 5. The number of hours is reasonable given the work done on the case, and the hourly rate is also reasonable given the experience of counsel.

---

[2] Employers were also sent a notice that the liquidated damages rate would be 20%. *See* Maraia Decl., Ex. 7 (memo to contributing employers).]

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for default judgment and awards damages as follows: (1) $118,079.28 in unpaid contributions; (2) $23,615.86 in liquidated damages; (3) $3,149.23 in interest; and (4) $2,905 in fees and costs. The total damages awarded are $144,844.37.

This order disposes of Docket No. 25.

IT IS SO ORDERED.

Dated: June 30, 2011

_____
EDWARD M. CHEN
United States District Judge